HOUCK & CO. *v.* CLARENCE P. WRIGHT.

1. TRUST AND COMBINES. *Code* 1892, §§ 4437-4442, *chapter* 140. *Sales.*

Chapter 140, code 1892, prohibiting trusts and combines, was not intended to debar a person from conducting his private business according to his own judgment, and he may confine his sales of goods manufactured by him to a single dealer in a given territory.

2. SAME. *Collateral contract.*

A contract of sale between a retail merchant and his customer is collateral to an agreement between the merchant and a manufacturer of the goods sold, and is not affected by infirmities, if any, in the latter contract.

FROM the circuit court of Leflore county.

HON. F. A. MONTGOMERY, Judge.

Houck & Co., appellants, were the plaintiffs in the court below; Wright, appellee, was defendant there.

Vose & Sons were manufacturers of pianos at Boston, Massachusetts; Houck & Co. were dealers in musical instruments at Memphis, Tennessee. The manufacturers agreed with the Mem-

phis dealers that the latter should have, to the exclusion of all others, the right to sell pianos of the former's manufacture in certain territory contiguous to Memphis, in Arkansas, West Tennessee, and North Mississippi, including Leflore county, in this state.  Houck & Co., through a traveling salesman, received a written contract or order for a piano of Vose & Sons' manufacture from Wright, at Greenwood, in said county, by the terms of which the same was to be shipped to Greenwood and $100 of its price was to be paid upon delivery.  The piano was so shipped and tendered to Wright, but he refused to receive it.  This suit was begun by Houck & Co. to recover upon the contract made with Wright.  The court below gave a peremptory instruction for the defendant.

*Williamson, Humphreys & Gwin* for appellants.

Chapter 140 of the annotated code of 1892 elaborately and explicitly defines a trust and combine.  Is this agreement in restraint of trade in the sale of pianos?  "Does it increase or reduce the price of pianos?"  Is the agreement vicious or illegal under any one of the definitions of the statute?  It cannot possibly restrain the trade in pianos; neither can it by possibility limit, increase, or reduce their price; neither can it limit, increase or reduce the production or output of the same.  Every manufacturer of or dealer in pianos can enter the territory occupied by appellants under their contract with Vose & Sons, and sell pianos to any individual who may wish to purchase.

It is evident that the legislature, in enacting the statute, intended to denounce as illegal agreements that prevent competition in the manufacture and sale of commodities, and all agreements that prevent the importation and purchase of such commodities.  This agreement leaves the territory open for all purposes to every piano manufacturer and dealer in the world, and no possible injury, such as is contemplated by the statute, could result to the general public or any individual by reason of its existence.

*Mayes & Harris,* on same side.

If we regard the litigation from the point of view of a contract and dealing between Vose & Son and Houck & Co., it was a contract and dealing between Massachusetts and Tennessee. If we regard it as a contract and dealing between Houck & Co. and the appellee, it was a contract and dealing between Tennessee and Mississippi. If we regard it as a contract between Vose & Co. and the appellee, it was a contract and dealing between Massachusetts and Mississippi. From any point of view it was interstate commerce. The following authorities show that dealings such as are presented in this case are matters of federal regulation, and that the state cannot constitutionally undertake their regulation: *Overton* v. *Vicksburg,* 70 Miss., 558; *United States* v. *Coal Dealers Association,* 85 Fed. Rep., 252, 265; *Robbins* v. *Shelby County Tax. District,* 120 U. S., 489; *United States* v. *Addystone Co.,* 85 Fed. Rep., 271; *Ascher* v. *Texas,* 128 U. S., 129; *Teisey* v. *Hardin,* 135 U. S., 100. And we submit that counsel are altogether in error in discussing the contents and meaning of chapter 140 of the Mississippi code.

The substance of the contention of appellee is that Vose & Sons must compete with themselves, and any arrangement which excludes such suicidal self-competition in unlawful and in restraint of trade. No rule of law or good morals requires a manufacturer to organize his business so that he shall be found bidding against himself for customers, either directly or through his agents.

Legislation which interferes with trade and trade processes should be cautious, and such laws as are enacted for that purpose should be reasonably and moderately construed and applied, else infinite mischief might ensue. *Hopkins* v. *United States,* 171 U. S., 578, 600; *United States* v. *Joint Traffic Association,* 171 U. S., 505, 568.

The thing which the law condemns, and which the statute was designed to prevent, was and is a combination by which

one manufacturer is prevented from coming into competition with another manufacturer—as, where territory should be parceled out between the Vose pianos and the Bradford pianos, the two factories agreeing not to canvass the same section, or where dealers who sustain co-ordinate relations to the subject of trade (as in the coal selling cases) undertake to monopolize certain territory, either by parceling out the same or by establishing a card rate in a common district. But it is a different thing entirely to say that a manufacturer shall not arrange the agencies for his own output in the manner shown by the testimony here. Something must be trusted to the man's own sense of interest, and to some extent it must be allowed that a man may conduct his business according to his own judgment.

Every man has a right to fix a price upon his own goods, and to arrange matters so that he shall get that price or not sell. Trusts and combines are unlawful because of the element of conspiracy involved. The argument of appellee's counsel overlooks the true nature of a conspiracy.

The court will observe that the arrangement denounced by the appellee does not reduce competition in any proper sense of that expression, it only secured the manufacturer against an increase of competition of his own creating.

We adopt the luminous and admirable statement of the true doctrine made by Judge Taft in the case of *United States* v. *Addystone Company*, 85 Fed. Rep., 271, as made on pages 280 to 282. See, also, *United States* v. *Joint Traffic Association*, 171 U. S., 505, 566-568.

There is no foreseeing or measuring the far reaching and probably disastrous consequences to all branches of industrial enterprises, if the courts should establish the rule contended for by appellee in this case. Run out to the inevitable consequence, it leads to the result that it would be unlawful for a manufacturer to employ only one salesman, or a number in anywise limited, and would require him to employ all who might apply, being qualified.

Besides all this, the contract sued upon between Houck & Co. and Wright is not the contract of which complaint is made by appellee; it is a collateral to the Vose & Son agreement, and the complaint is wholly of the latter.

*Coleman & McClurg* and *Rush & Gardner,* for appellee.

The laws of Mississippi must control. The contract sought to be enforced is a Mississippi contract, made at Greenwood in executory form, and to be fulfilled and completed at Greenwood by delivery of the piano on board of the cars at that place. The plaintiffs have invoked the Mississippi law to coerce the defendant into compliance with their contract, and the defendant had a clear right to test the status of the plaintiffs, and to measure their right to stand in the forum to which they had brought him by the laws of that forum. This is none the less true, if it be conceded that the alleged combination to which the plaintiffs were parties should be considered a combination in restraint of interstate commerce, because such combination is made criminal by the federal laws, and the courts of this state will not aid persons in the furtherance of their schemes in violation of a federal statute.

Should the plaintiffs escape the statutes of this state on the plea of interstate commerce, and then, in turn, escape the federal statute because it does not, in terms, declare contracts of this character unenforceable, and administered alike in all of the courts, whether state or federal?

The federal statute (July 2, 1890), commonly known as the Sherman act, and the statutes of the states on the subject of trusts, have abolished the common law rule, and have arbitrarily declared that all contracts in restraint of trade are void. In considering contracts under these statutes the reasonableness or unreasonableness of the contract or restraint is no longer in question. In fact, the courts, state and federal, have gone to the extent of holding that if the contract tends to restrain trade, it is unlawful and void. The purpose of such

statutes is to secure the freest competition in all kinds of trade, traffic and commerce, local and interstate. It may be said to be the public policy of the state and of the national government to secure to the people, as far as may be done by legislation, competition free and unrestricted, and to recognize that as the general rule which governs all the ordinary business pursuits and transactions of life. To determine what is the public policy of the state or of the country, a plain and unmistakable rule has been given us. The public policy of the government is to be found in its statutes, and when they have not directly spoken, then in the decisions of the courts and the constant practice of the government officials, but when the lawmaking power speaks upon a particular subject over which it has constitutional powers to legislate, public policy in such a case is what the statute enacts. If the law prohibits any contract or combination in restraint of trade or commerce, a contract or combination in violation of such law is void. *United States* v. *Trans. Mo. Frt. Asso.,* 166 U. S., 290; *United States* v. *Joint Traffic Asso.,* 171 U. S., 505; *Addystone Pipe Co.* v. *United States,* December 4, 1899; *Brewing Co.* v. *Templemon,* 90 Tex., 277; *Fuqua, Hinkle & Davis* v. *Brewing Co.,* 90 Tex., 301; *T. & P. Coal Co.* v. *Lawson,* 89 Tex., 394; *Welch* v. *Phelps Windmill Co.,* 89 Tex., 653; *Houck & Deiter* v. *Brewing Co.,* 88 Tex., 184.

The authorities hold uniformly that at the common law the test to be applied in deciding whether a contract is in restraint of trade is to consider (1) whether the contract is based upon a sufficient consideration, (2) whether it is limited to a reasonable time, and (3) whether it is limited within a reasonable territory. And in determining each of these considerations from the nature of the case, each case must be referred to its own particular facts. It is evident that what would be an entirely sufficient consideration in one contract, as the sale of a drug store and its good will, or the physician's practice, or the butcher's business, would be considered wholly insufficient

in another, as, for instance, a wholesale business in a metropolis, a railroad system or a line of steamboats. If the contract comes within these limitations, it is valid at common law, otherwise it is void. The test to be applied in deciding whether the restraint is reasonable or not, is to consider whether it is only such as is necessary to afford a fair protection to the interest of the party in whose favor it is given, and not so large as to interfere with the interest of the public. In this test, too, each case is to be considered with reference to its own facts; it is to be applied to each proposition of consideration, time and place.

These are all questions of fact to be submitted to the jury, unless, as in this case, the testimony is so overwhelming for the defendant that the court would not let a verdict for the plaintiff stand, in which case the verdict will be directed by the court. *Thompson* v. *Means,* 11 Smed. & M., 604; Beach on Monop. and Ind. Trusts, secs. 40-46; 9 Am. & Eng. Enc. L. (1st ed.), 884, and notes; Cooley on Const. (5th ed.), secs. 679-683.

TERRAL, J., delivered the opinion of the court.

If the contract between Vose & Sons, of Boston, and Houck & Co., of Memphis, were, for any cause, illegal, such illegality could not affect the contract between Houck & Co. and C. E. Wright, because it is collateral to it. 2 Beach Mod. Law of Contracts, sec. 1589.

But the arrangement between Vose & Sons and Houck & Co. is entirely legal. It does not operate to suppress competition, nor to regulate the production or sale of any commodity. As said by counsel of appellant, its purpose is to facilitate and advance the sale of pianos. It is Vose & Sons regulating their own business, endeavoring thereby to sell as many pianos as possible, and on the best terms for themselves and their customers. Instead of having an agent in every county in North Mississippi, which might be burdensome, or perhaps ruinous

to their business, they have an agent in a trade center, Memphis, where they think they can conduct their business to advantage; and the Memphis agent canvasses the territory assigned to them, for the sale of their pianos, and when one is ordered they become responsible for the price of it.

The Memphis house could not afford to take an agency, and send out canvassers for the sale of the pianos, if they were to be met everywhere by other agents of Vose & Sons engaged in competition with them in the same business, and so the arrangement they make is mutually advantageous to both parties, and gives equal opportunities for all persons to purchase Vose & Sons pianos, and upon the most reasonable terms.

The legislature, by the chapter on trusts and combines, did not intend to debar a person from conducting his own private business according to his own judgment. Indeed there is no law, federal or state, that requires a person to sell his goods, against his will, to any other person, or to send agents abroad to seek business, or even to compel him to employ agents in the conduct of his business. These are matters of private judgment and discretion, which belong to every citizen by the laws of nature; they are rights inherent in every freeman, which no human law can rightly supersede or impair.

The plaintiff below by his evidence before the court entitled himself to a judgment, and the contentions of the defendant are without merit.

*Reversed and remanded.*