GANO v. DELMAS.*

(Division B.   Oct. 19, 1925.)

[105 So. 536.  No. 25035.]

1. MONOPOLIES. *Provision in contract that, if buyer sold cement pur-
      chased, or used any part of it in work other than that described,
      seller could decline to make further deliveries, held not to violate
      anti-trust statute.*

   Plaintiff sold defendant thirty thousand barrels of a certain brand
      of cement to be used by defendant in performing a public road
      construction contract, which contract provided, among other
      things, that the cement "is sold and delivered for use in the
      work described, and if buyer shall sell or otherwise dispose of
      any portion of said cement, or use any portion thereof in any

work other than that described," the seller should have the right to decline further deliveries of cement. Defendant claimed that the contract was unenforceable, because its operation was to restrain trade in violation of anti-trust statute (sections 5002, 5003, Code of 1906; sections 3281-3285 inclusive, Hemingway's Code). *Held:* That the contract was not violative of the statute, because its effect was not to unduly and unreasonably restrain trade; that its enforcement was not inimical to the public welfare.

2. SALES. *Evidence held to sustain directed verdict for seller of cement suing for breach of contract to buy cement.*

Evidence examined, and *held,* that there was no error in the trial court directing a verdict for plaintiff.

---

*Headnotes 1. Contracts, 13 C. J., Section 427; 2. Sales, 35 Cyc., p. 600.

APPEAL from circuit court of Jackson county.
HON. D. M. GRAHAM, Judge.
Action by Claude Delmas against S. A. Gano. Judgment for plaintiff, and defendant appeals. Affirmed.

*Denny & Heidelberg* and *Harry Gamble,* for appellant.

The question raised is whether the contract as sued on was "In violation of the provisions of chapter 88 and chapter 119 of the Laws of Mississippi, 1908, on trusts and combines, and particularly in violation of sections 3281-3283, Hemingway's Code as contrary to the public policy of the state of Mississippi."

I. The appellant's contention is that the contract here sued on is in violation of the provisions of the Anti-Trust Statutes, as shown by the terms of said contract, and expressed in the following language: "The quantity of *'Royal Cement'* mentioned on the reverse side hereof is sold and delivered for use in the work described, *and if buyer shall sell or otherwise dispose of any portion of said cement, or use any portion thereof in any work other than that described, or assign this contract or any part*

*thereof,* or fail to comply with the terms of payment, or any of the conditions and limitations of this contract, or if the buyer's credit becomes impaired, then in any such event or events, seller may, at his option, decline to make further deliveries hereunder, buyer remaining liable for all unpaid accounts.''

If such a contract as this is not in restraint of trade; if it does not hinder and prevent the selling and exchanging of personal property, or an article or commodity of trade that is in every day use, and in this day a necessary and indispensable article of commerce, we are at a loss to understand what kind of an agreement or contract would be in restraint of trade. If said contract, we submit in candor and frankness, is not for the fixing, maintaining and restricting of prices unlawfully and arbitrarily, we cannot conceive of one that would be. 24 R. C. L., sec. 655, page 364; *McCall* v. *Pearson-May-Pherschmidt Co.,* 107 Miss. 865, 66 So. 274; *McCall* v. *Hughes,* 102 Miss. 375, 59 So. 794, 42 L. R. A. (N. S.) 63.

So far as we have been able to find there is an unbroken line of decisions from Coke, cited above, to this day, both in England and this country, that any attempted restriction as to the use of personal property bought and paid for, will not be recognized by the court, unless it be with reference to some particular item or article of personal property of which the intrinsic value thereof is not the real consideration, but refers specifically to heirlooms and articles akin to them. *Elijah & Winne* v. *Mottinger,* 142 N. W. 1030, 161 Iowa 361; *Brown* v. *Staple Cotton Co-Op. Association,* 96 So. 849; *Kosciusko Oil Mill Co.* v. *Wilson Cotton Oil Co.,* 43 So. 435; *Y. & M. V. R. R. Co.* v. *Scales,* 85 Miss. 528, 37 So. 942.

Under the common law and the expressed terms of the statute and under the decisions cited above, as to the construction and applicability, it is manifest that the contract here sued on is within the rule as announced by the common law, and in violation of the anti-trust statute. It is in violation of each of the sub-divisions of the

statute enumerated in the demurrer. It is in restraint of trade in that it requires the public work to be constructed with but one specified brand of cement, furnished by a specified person and from a specified manufacturer, and prohibits the appellant from procuring cement of equal quality from other sources than through the buyer, the appellee herein, even though the shipper, the Dixie Portland Cement Company, could not supply same according to the requirements of appellant, whereby the public work would suffer and the business of the county and the appellant. As further authorities on this point, see *Universal Film Co.* v. *Copperman,* 218 Fed. 577, and *Waltham Watch Co.* v. *Keene,* 212 Fed. 225.

II. It is stipulated in the contract that the cement should be furnished by the Dixie Portland Cement Company, subject to contingencies of manufacturing and shipping and other causes beyond control of shipper and seller, and cement to be delivered as nearly as practicable to meet the necessities of the work upon reasonable notice of time for deliveries; and that shipments are to be at "the market price of Royal cement at the date of shipment." "But not higher than the price named therein;" that prices quoted are "based on freight rates in effect on date of quotation and are subject to revision if freight rates are changed."

In *Hart* v. *Gardner,* 74 Miss. 153, 20 So. 877, it is stated that the purpose of all rules of construction is to effect the intention of the parties to the instrument. In *Wall* v. *DeJet,* 76 Miss. 104, 23 So. 437, it is held that it is the duty of the court in construing a contract to place itself in the situation of the parties at the time the contract was made, and to ascertain their intention from the contract, in the light of the situation and looking also to the subject-matter. See also *Pratt* v. *Canton Cotton Oil Co.,* 51 Miss. 470; *Tufts* v. *Greenwald,* 66 Miss. 360, 6 So. 156.

Manifestly the intention of the parties was that the market price of the cement to be shipped under the con-

tract would be such as would prevail at the plant of the Dixie Portland Cement Company, the point of shipment, plus freight to the point of delivery. It is in the testimony and undisputed that the price of *Royal Cement* in New Orleans, La., at the time that appellant refused to accept cement from the appellee, was two dollars and eighty-two cents per barrel, and that said cement was shipped from the point of manufacture, a point near Chattanooga, Tenn., to New Orleans, by way of the Louisville & Nashville R. R. Co., through the very points or by the very stations where three dollars and thirty cents and later three dollars and twenty cents per barrel was demanded.

It is further shown by the undisputed testimony of the appellant that he did go into the open market and buy cement of a quality and grade equal *o the *Royal Cement* for the price of two dollars and eighty-two cents per barrel, delivered at the points called for in the contract, and that the price of two dollars and eighty-two cents which the appellant paid for the cement delivered to him at points mentioned in the contract here sued on was the same price that prevailed at New Orleans, for the cement. 16 Cyc. 1143. See *Paxton* v. *Myer, Weis & Company,* 58 Miss. 445.

If, however, we should be in error in our contention that "market price" in this case is price at the manufactory plus freight to the point of delivery, then we earnestly beg to submit that the determination of "market price" of *Royal Cement* at points of delivery is not to be settled by the arbitrary *fiat* of the Dixie Portland Cement Company to its exclusive dealer, Delmas, but by what was its market value. That is to say, when "market price" is not discoverable by proof of free sales of the commodity in the open market, then its "market value," if discoverable, becomes its "market price." See especially *McGarry* v. *Superior Portland Cement Company, et al.* (1917), 95 Wash. 412, 163 Pac. 928, American and English Annotated Cases, Vo. 1918A,

p. 578 and note. This case holds that justice can be done only by interpreting the phrase in this contract, "market price," by its true meaning, which is "market value," the facts of the, case considered.

It is our contention, therefore, that the term "market price" used in the Delmas-Gano contract was not in the intention of the parties and cannot be held in law, a price such as the manufacturers *chose to maintain* at the points mentioned in the contract, under a contract already made by his exclusive dealer, and with which the manufacturer was familiar; but was intended by the parties, and will be held in law, to be the price such as that quality of cement could actually be purchased and delivered for. This view is fully sustained by a note to the foregoing case, in Ann. Cas. 1918 A at 575.

We now sum up our contentions, as follows: The demurrer should have been sustained, holding that the contract was in restraint of trade in violation of the statutes of Mississippi and the Sherman Anti-Trust Law; or the contract had been breached by the plaintiff in that he refused to reduce the price of Royal Cement to keep pace with the reduction of cements of similar quality. Wherefore, we submit that the judgment of the lower court should be reversed, and this case dismissed.

*White & Ford,* for appellee.

The question presented is whether Delmas is entitled to recover profits he would have made had the contract been carried out. The proof fixed it at ten cents per barrel. The authorities generally hold that profits may be recovered where definite. *Delta, etc.,* v. *Yazoo, etc.,* 105 Miss. 861; *Ice Company* v. *Holliday,* 106 Miss. 714; *Stevenson* v. *Morris,* 69 Miss. 234.

While our friends on the other side have cited no case holding or tending to hold that Delmas' contract with Gano would have been met by his furnishing cement other than Royal, yet that was one of the principal contentions in the court below, and out of an abundance of precaution, we cite a few cases showing the fallacy of this con-

tention.  *Shackelford* v. *Sloss Iron & Steel Co.,* 36 So. 1005, 140 Ala. 329; *Daggy* v. *Cox,* 19 Ind. 142; *Hiatt* v. *Harris,* 28 Ind. 379; *King* v. *City of Rochester,* 38 Atl. 256, 67 N. H. 310; *Lowry* v. *Cooper,* 21 Ind. 269; *Clark* v. *Wright,* 5 Phila. 432.

Looking at the contract to get the intention of the parties as to what market price was contemplated, manifestly market price at points of delivery was intended. There is nothing whatever in the contract to warrant the conclusion that New Orleans price was thought of. Furthermore, Gano knew how and where Delmas was to get his supply of cement, because the contract between them gave notice that Delmas had a contract with the Dixie Portland Cement Company for the furnishing of the contract supply, and this contract is also in evidence. The law on market price in a case of this sort is clear, and the following may be noted: *Gray Harbor* v. *Turnbull,* 163 Ill. App. 231; *Pugh* v. *Porter & Co.,* 50 Pac. 772; *Parish & Co.* v. *Y. & M. V. R. R. Co.,* 103 Miss. 288.

Applying the reasoning of the above cases to the facts here, we find that in the testimony of Delmas that Royal cement was sold at Pascagoula to other persons other than Gano at the same price that Gano was charged, and, furthermore, that this commodity was largely used at Pascagoula, other cements having been sold there, as well as Royal. Manifestly, the New Orleans price was not thought of, as it is not mentioned in the contract. Even if Delmas had sought to obtain his supply of Royal cement in New Orleans, the proof is that it would have cost him about two dollars and eighty-two cents plus forty cents freight to Pascagoula, and this would have been in line with the price that Gano charged. It follows from the foregoing, we submit, that Delmas' right to recover was abundantly clear. The contract must be enforced as the parties made it.

Defendant complains of what he conceives to be monopolistic or trust features of the contract. While there has

been much loose talk about the provisions of the state and federal anti-trust laws, fortunately the courts have set at rest some of the leading phases of the subject. The authorities generally hold that a contract is not invalidated, which is in reasonable restraint of trade. In *Houck* v. *Wright*, 77 Miss. 476, this court held that a wholesaler can confine his sale of goods to one dealer in any given territory, and not thereby violate the anti-trust law. The Dixie Portland Cement Company had the right to select Delmas as its exclusive dealer in Jackson county territory, according to that decision. In *Telephone Co.* v. *State*, 100 Miss. 102, the court held: "That contracts in reasonable restraint of trade are valid, and are not void unless unreasonable and inimical to public welfare."

The same is *held in Brown* v. *Staple Cotton Oil Co.*, 132 Miss. 859. The supreme court of the United States has frequently passed on this anti-trust question. While authorities might be multiplied, the following cases dispose of the contentions made by appellant in this regard: *United States* v. *Colgate & Co.*, 63 L. Ed. 993; *United States* v. *Schrader*, 64 L. Ed. 471; *R. R.* v. *Pullman Car Co.*, 35 L. Ed. 97, 139 U. S. Sup. Court Rep. 79.

In *Cotton Oil Co.* v. *State*, 121 Miss. 615, the court held that it was not unlawful for a ginning company to attempt to destroy competition by putting the price of ginning cotton below the actual cost. There is nothing invalid about the contract here.

ANDERSON, J., delivered the opinion of the court.

Appellee, Claude Delmas, brought this action in the circuit court of Jackson county against appellant, S. A. Gano, for damages claimed to have been suffered by appellee, because of an alleged breach of contract of purchase by appellant from appellee of about thirty thousand barrels of Royal cement, and recovered a judgment for two thousand five hundred and thirty-three

dollars and sixteen cents, from which appellant prosecutes this appeal.

There was no real conflict in the material evidence. The case, therefore, was one for a directed verdict for one party or the other. Appellee was a dealer in cement, having his residence and place of business in the city of Pascagoula. Appellant was a road contractor. He had a contract with the state highway commission and Jackson county to construct a concrete road along a part of the "Old Spanish Trail," that part between Moss Point in this state, and the Alabama state line. The construction of the road required the use of a large quantity of cement. Appellee handled Royal cement, and perhaps other brands. This cement was manufactured by the Dixie Portland Cement Company of Chattanooga, Tenn. Appellant and appellee entered into a written contract covering the sale and purchase of the required cement for said road project. The material provisions in the contract, so far as the rights of the parties to this cause are concerned, are substantially as follows:

Appellant agreed to purchase from appellee thirty thousand barrels of Royal cement, or so much thereof as might be necessary in the construction of said road. Appellee was the sole dealer in that territory on the products of the Dixie Portland Cement Company of Chattanooga, Tenn. One of these products was Royal cement, the brand purchased by appellant. The price fixed in the contract was three dollars and thirty-two cents per barrel, which carried a profit, as the evidence shows, of ten cents per barrel to the appellee as dealer. The contract provided that three dollars and thirty-two cents should be the maximum price, and that appellant, during the process of the construction of the road as he needed the cement, should have the advantage of any decline in the market price of Royal cement. After appellee had delivered the appellant something like five thousand barrels of Royal cement, appellant claimed that there had been a decline in the market price of that brand of

cement, and called upon appellee to give him the benefit of this alleged reduction. After some negotiations, a reduction of twelve cents per barrel was made, but appellant declined to take any more cement, claiming that the market price was only two dollars and eighty-two cents per barrel, at which price the evidence showed it was selling at that time in the city of New Orleans.

The contract provides further:

"The quality of Royal cement mentioned on the reverse side thereof is sold and delivered for use in the work described, and if buyer shall sell or otherwise dispose of any portion of said cement or use any portion thereof in any work other than that described," appellee at his option shall have the right to decline further deliveries, etc.

It is this provision in the contract which is the basis of the main contest between the parties. By this suit, appellee sought to enforce that contract. Appellant urges upon the court that the contract is not enforceable, because it violates our anti-trust statute (sections 5002 and 5003, Code of 1906; sections 3281 to 3285, inclusive, Hemingway's Code). Appellant raised this question, first, by demurrer to appellee's declaration which was overruled, again during the trial by objecting to the introduction of the contract by appellee, and then again at the conclusion of the evidence by asking the court to direct a verdict in his favor. In fact both parties requested directed verdicts at the conclusion of the evidence, and the request of appellee was granted.

The principal ground, upon which appellant urges that the contract is void, is because he contends it is in restraint of trade; that the provision therein which bound appellant not to sell or otherwise dispose of any portion of the cement bought by him from appellee, or use any portion thereof in work other than the "Spanish Trail" road project, is violative of our anti-trust statute. To sustain his position, appellant cites the following from 24 R. C. L., p. 364, section 655:

"At common law, it was established at an early date, and has since been generally recognized, that a general restraint on the alienation of chattels, except when a very special kind of property is involved, such as a slave or an heirloom, is void. 'If a man,' says Coke, 'be possessed . . . of a horse or of any other chattel, real or personal, and give or sell his whole interest or property therein, upon condition that the donee, or vendee shall not alien the same, the same is void, because the whole interest and property is out of him, so as he hath no possibility of a reverter; and it is against the trade and traffic and bargaining and contracting between man and man.' "

It will be observed from the terms of the contract that the amount of cement purchased by appellant was limited to the requirements of this particular road project, estimated to be about thirty thousand barrels. The question is whether or not the provision in the contract, by which appellant agreed not to sell or otherwise dispose of any portion of the cement so bought, or use any portion thereof on any other work than the "Spanish Trail" project, was such a restraint of trade as is violative of our anti-trust statute. Certainly it was a partial restraint of trade. The contract, if carried out, would operate to restrain trade to some extent. But that is not the criterion. It was held in *Telephone Co.* v. *State,* 100 Miss. 102, 54 So. 670, 39 L. R. A. (N. S.) 277; *Sivley* v. *Cramer,* 105 Miss. 13, 61 So. 653, and *Pearson* v. *Harry Price and wife,* the opinion in which latter case is handed down with this opinion, that all contracts and agreements in restraint of trade are not violative of our anti-trust statute; that it is only those which are inimical to the public welfare. Conceding that the contract involved is in restraint of trade, the question therefore is whether it is such a restraint of trade as is inimical to the public welfare.

It was held in *Houck* v. *Wright,* 77 Miss. 476, 27 So. 616, that a wholesale merchant could confine his sale of

goods to one dealer in a given territory, without violating our anti-trust statute. The supreme court of the United States, whose construction of the federal Anti-trust Act is substantially the same as that given our statute by this court, held in *U. S.* v. *Colgate & Co.,* 250 U. S. 300, 39 S. Ct. 465, 63 L. Ed. 993, 7 A. L. R. 443, that in the absence of any purpose to create a monopoly the Sherman Anti-trust Act did not restrict the long-recognized right of a trader or a manufacturer engaged in private business freely to exercise his own independent discretion as to parties with whom he would deal, and to announce in advance the circumstances under which he would refuse to sell. In *Railroad Co.* v. *Pullman Southern Car Co.,* 139 U. S. 79, 11 S. Ct. 490, 35 L. Ed. 97, it was held that an agreement that the Pullman Southern Car Co. should have exclusive right for fifteen years to furnish drawing rooms and sleeping cars for the use of a railroad company, and that the railroad company should not, during that period, contract for cars of that kind with any other party or parties, was not void as against public policy or in restraint of trade.

The restraint of trade involved under this contract consisted simply in this: That appellant should take the thirty thousand barrels of Royal cement, the estimated requirements for the construction of the road project he had under contract, and use it exclusively on that road construction; that he would use no other cement, and would not dispose of any part of the cement so purchased by him to any other person or for use on any other work. To begin with, appellant had all the cement dealers in the country to purchase from. After he refused further deliveries from appellee, he went out into the open market and bought another brand of cement with which to finish his contract. The same markets were open to him before he contracted with appellee. We are of opinion that the restraint of trade resulting from this contract was reasonable, and therefore not inimical to the public welfare.

Another question in the case is, whether or not appellant was entitled to a directed verdict, because of an alleged violation of the contract by appellee in refusing to give appellant the benefit of the decline in the market price of Royal cement, which appellant contends took place as the road work progressed. As stated above, there was no conflict as to the material facts. The facts out of which this question arises, in addition to what has been stated, were as follows: Appellee had no authority or power as a dealer in Royal cement, to fix the market price; he was not the manufacturer of it; the manufacturer was the Royal Portland Cement Company of Chattanooga, Tenn. Appellee was a mere dealer in their product, in Pascagoula, and added to the market price in that territory enough to net him ten cents a barrel for each barrel handled. Appellant's evidence showed, it is true, that Royal cement was sold in New Orleans at the time this road was being constructed, at two dollars and eighty-two cents per barrel, but it showed further, that the manufacturer fixed that price to meet the price of cement in the New Orleans territory fixed by foreign importers. The manufacturer, not appellee, refused to reduce the price in the territory in which appellee handled Royal cement. And the evidence showed without conflict, that appellee could not have gotten Royal cement in New Orleans or elsewhere in the country, for less than the price at which he offered it to appellant; that if he had bought it in New Orleans, for illustration, from the dealer there at two dollars and eighty-two cents a barrel the freight from New Orleans to Pascagoula would have made the same price exactly in the latter city as that appellee made appellant. There is no evidence whatever tending to show that appellee entered into conspiracy or understanding with the manufacturers of Royal cement by which the price was fixed. On the contrary, the evidence showed, as stated, that appellee had nothing whatever to do with the fixing of the price of Royal cement in his territory or elsewhere. Further-

more, the evidence showed either directly or by necessary inference, that the market price contemplated in the contract was the market price delivered at Pascagoula.

We find no merit in the other questions argued.

We are of the opinion that the court committed no error in directing a verdict for appellee for the amount sued for, there being no controversy as to the amount.

*Affirmed.*